## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTONIA GITTENS, individually and on behalf of all others similarly situated, | No. 7:24-cv-07965 |
| *Plaintiff*, | |
| v. | **JURY DEMAND** |
| BADIA SPICES, INC., | |
| *Defendant*. | |

## <u>CLASS ACTION COMPLAINT</u>

**Table of Contents**

I.      Introduction..........................................................................................................1

II.     Parties................................................................................................................2

III.    Jurisdiction and Venue.......................................................................................2

IV.     Facts..................................................................................................................2

        A.      Lead is toxic..........................................................................................2

        B.      Defendant's Products contain lead.........................................................3

        C.      Defendant is aware of this risk...............................................................5

        D.      Consumers are not aware of the danger posed by Defendant's Products. ...............6

        E.      Plaintiff was misled by Defendant. ........................................................6

V.      Class Action Allegations....................................................................................7

VI.     Claims...............................................................................................................9

        Count I: Violation of New York Gen. Bus. Law § 349 ....................................9

        Count II: Violation of New York Gen. Bus. Law § 350................................10

        Count III: Breach of Implied Warranty ........................................................11

        Count IV: Breach of Express Warranty ........................................................13

        Count V: Quasi-Contract ............................................................................13

VI.     Jury Trial Demand. ..........................................................................................14

VII.    Prayer for Relief..............................................................................................14

## I.    Introduction.

1.    Lead is toxic to humans.  When consumed, it accumulates in the body and "affect[s] multiple body systems."[1]  It is linked to "a host of health problems in children and adults."[2]  In adults, for example, it can "lead to nervous system problems, hypertension, immune system suppression, kidney damage, and reproductive issues."[3]  In children, it can cause profound and "permanent adverse health impacts, particularly on the development of the central nervous system."[4]  There is "no known safe blood lead concentration."[5]  Lead exposure is estimated to account for "21.7 million years lost to disability and death worldwide due to…long-term effects on health."[6]

2.    Due to its toxicity, lead exposure is regulated.  For example, the state of New York has set a ceiling of 1 part per million of lead for spice products.  Spices that have lead levels higher than 1 part per million are recalled.[7]

3.    Defendant Badia Spices, Inc. ("Badia") makes, sells, distributes, and markets spice products, including Badia Cinnamon Powder (the "Products").  The Products contain lead.  Yet, there is no warning or disclosure telling consumers that the products contain lead.  And, recent testing by Consumer Reports' laboratory shows that Badia's Cinnamon Powder contains harmful levels of lead exceeding New York's limit.[8]

4.    Like other consumers, Plaintiff purchased Badia Cinnamon Powder. The product did not disclose the presence of lead.  Plaintiff believed that the product was properly manufactured, free from defects, safe for consumption, and not adulterated or misbranded.

---

[1] https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health
[2] https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/
[3] *Id.*
[4] https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health
[5] *Id.*
[6] *Id.*
[7] https://www.cnn.com/2024/09/12/health/lead-cinnamon-powder-spices-wellness/index.html
[8] https://www.consumerreports.org/health/food-contaminants/high-lead-levels-in-cinnamon-powders-and-spice-mixtures-a4542246475/

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica. CA 90401

## II.    Parties.

5.      Plaintiff Antonia Gittens is a citizen of New York, domiciled in Westchester County.

6.      The proposed class includes citizens of all states except California.

7.      Defendant Badia Spices, Inc. is a Florida corporation with its principal place of business at 1400 NW 93rd Avenue, Miami, FL 33172. Defendant makes, markets and sells Badia Cinnamon Powder.

## III.   Jurisdiction and Venue.

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

9.      This Court has personal jurisdiction over Defendant.  Defendant does business in New York. It advertises and sells its Products in New York, and serves a market for its Products in New York. Due to Defendant's actions, its Products have been marketed and sold to consumers in New York, and harmed consumers in New York. Plaintiff's claims arise out of Defendant's contacts with this forum. Due to Defendant's actions, Plaintiff purchased one of Defendant's Products in New York, and was harmed in New York.

10.     Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate State. Defendant advertises and sells its Products to customers in this District, serves a market for its Products in this District, and Plaintiff's claims arise out of Defendant's contacts in this forum. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred here.

## IV.   Facts.

### A.    Lead is toxic.

11.     Lead is toxic to humans.  It accumulates in the body and "affect[s] multiple body

2

systems."[9]  In children, it can cause "permanent adverse health impacts, particularly on the development of the central nervous system."[10]  It also "causes long-term harm in adults, including increased risk of high blood pressure, cardiovascular problems and kidney damage."[11] There is "no known safe blood lead concentration."[12]  "Lead exposure is estimated to account for 21.7 million years lost to disability and death…worldwide due to long-term effects on health."[13] "There is no level of exposure to lead that is known to be without harmful effects."[14]

12.    Because consuming lead is dangerous, the State of New York regulates lead levels in spices.  New York recalls spices that have more than 1 part per million of lead.[15]

**B.    Defendant's Products contain lead.**

13.    Defendant makes, sells, and distributes spices and powders, including Badia Cinnamon Powder.  The Product is marketed as a "powder" that can be "used…on desserts, fruits and beverages," and as an "ingredient in some meat stews, rice preparations and vegetable dishes":

---

[9] https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] https://www.cnn.com/2024/09/12/health/lead-cinnamon-powder-spices-wellness/index.html
[14] https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health
[15] https://agriculture.ny.gov/system/files/documents/2023/10/regulatorypoliciesforheavymetalsinspicesanewyorkapproach_journalofregulatoryscience.pdf

 

14.    The Products are marketed as food products that are safe for consumption. Defendant's marketing statements—on the packaging and website— are made directly to buyers of the Products. By making, selling, and marketing the Products as spices and powders to consumers, Defendant represents to consumers that the Products do not contain harmful and toxic substances such as lead.

15.    The Products do not include any labeling indicating to consumers that they contain lead.  There is no warning indicating that consuming the Products can expose consumers to lead.  Based on the labels and the fact that the Products are sold and marketed as food products fit for consumption, consumers are misled into believing that these Products do not contain lead. They are unaware that the Products may be contaminated with lead, at levels greater than 1 part per million. That a product intended for consumption as powder contains lead, or may contain lead, is material to reasonable consumers.

16.    The truth is, the Badia Cinnamon Powder contains lead.  Recent testing by

Consumer Reports shows that Badia's Cinnamon Powder has lead levels greater than 1 part per million, a level that triggers a recall in New York.[16]  Testing by the State of New York also shows that Badia's Products contain lead.  In 2024, the New York Office of the Attorney General put Badia on notice for lead contamination in their Cinnamon Powder Products.[17]

17.    There is no need for Defendant's Products to contain lead.  Other spice and powder makers are able to make spice products without the lead levels in Badia's products.

**C.    Defendant is aware of this risk.**

18.    Defendant knows of the lead contamination risk for its cinnamon products because it has been told that the Cinnamon Powder Products are contaminated with lead.

19.    On June 2, 2024, the New York State Department of Agriculture and Markets Commissioner published an alert warning customers that Badia's Ground Cinnamon and Ground Ginger products were contaminated by lead.  It warned, "Exposure to lead may cause health problems to consumers, particularly infants, small children, pregnant women, and those with underlying kidney disorders.  If a child or a pregnant woman is exposed to lead for a prolonged period of time, permanent damage to the central nervous system, learning disorders, developmental defects, and other long-term health problems can occur."[18]  Contamination of Badia's products "was discovered after analysis by New York State Food Laboratory personnel revealed the product tested above the 1-part per million action level for lead in spices." *Id.*

20.    More recently, a widely publicized Consumer Reports study found that Badia's Ground Cinnamon contains lead, in levels in excess of New York state's limit for a recall.[19]  Badia's Ground Cinnamon was among the powders that posed the most risk, and was listed as one of the "Cinnamon Powders You Should Never Use."  *Id.*

21.    Thus, Defendant is aware of the lead contamination risk.

---

[16] https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/
[17] https://agriculture.ny.gov/news/consumer-alert-elevated-lead-levels-found-badia-spices-inc-brand-ground-ginger-and-ground
[18] *Id.*
[19] https://www.consumerreports.org/health/food-contaminants/high-lead-levels-in-cinnamon-powders-and-spice-mixtures-a4542246475/

**D.     Consumers are not aware of the danger posed by Defendant's Products.**

22.     Consumers reasonably expect that Defendant's Products are safe for consumption. The purpose of a spice is to use it as a food ingredient. They do not expect that the powder may be contaminated with lead.

23.     Consumers reasonably rely on Defendant's representations on the packaging and advertisements for the Products.  The representations on the packaging and advertisements are made directly to buyers.  The representations include the words "powder" and examples of the Product's use as a cooking "ingredient." The representations lead reasonable consumers to believe that the Product is safe for consumption.

24.     Defendant should have, but did not, warn consumers that its Products contained lead.  The information could have been placed on the powder labels.  For example, Defendant could have placed a warning that consuming the Products would expose consumers to lead.

25.     Thus, consumers are unaware that the Products contain lead. They are unaware that Defendant's Products may be contaminated with lead.

**E.     Plaintiff was misled by Defendant.**

26.     In summer of 2024, Plaintiff Antonia Gittens purchased the Badia Cinnamon Powder from a ShopRite store while living in Mohegan Lake, NY.

27.     In purchasing the Product, Plaintiff read and relied on the representations on the packaging. The packaging did not disclose that the Product had lead, or provide any warning that the Product might contain lead.  Thus, at the time of purchase, Plaintiff was unaware that Defendant's Product contained lead.

28.     In addition, Plaintiff saw and relied on the representations on the packaging that the Products were safe for consumption.  The representations include the word "powder," and examples of the Product's use as cooking "ingredient." These representations lead reasonable consumers, including Plaintiff, to believe that the Products are safe for consumption.

29.     Plaintiff relied on these representations and omissions. When she purchased the Products, Plaintiff relied on the fact that they were safe for consumption and that they did not contain lead.  She would not have purchased the Products if she knew that the Products

contained lead. In fact, knowing the truth, the Products are worthless to her.

30.    As a result, Plaintiff suffered injury in fact when she spent money to purchase Products she would not otherwise have purchased absent Defendant's misconduct.

**V.    Class Action Allegations.**

*The Nationwide ex-California Class and the New York Subclass*

31.    Plaintiff brings her claims individually and on behalf of the following class and subclasses:

- Nationwide ex-California Class: all persons other than persons in California who, while in the United States and within the applicable statute of limitations period, purchased one or more Products (the "Nationwide Class").[20]

- New York Subclass: all persons who, while in the state of New York and within the applicable statute of limitations period, purchased one or more Products (the "New York Subclass").

32.    The following people are excluded from the class and the subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assignees of any excluded persons.

*Numerosity*

33.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are millions of proposed class members.

*Commonality*

34.    There are questions of law and fact common to the proposed class.  Common

---

[20] The state of California has a state-specific regulatory scheme with notice requirements. Thus, California residents are excluded at this time.

questions of law and fact include, without limitation:

(1) Whether Defendant misrepresented and/or failed to disclose material facts concerning the Products;

(2) Whether Defendant's conduct was unfair and/or deceptive;

(3) Whether Defendant breached its contracts;

(4) Whether Defendant breached an express warranty;

(5) Whether Defendant breached an implied warranty;

(6) What damages are needed to compensate Plaintiff and the proposed class; and

(7) Whether an injunction is necessary to prevent Defendant from continuing to market and sell defective and adulterated Products that contain lead.

35.     Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased the Products.

36.     The interests of the members of the proposed class and subclass will be adequately protected by Plaintiff and her counsel. Plaintiff's interests are aligned with, and do not conflict with, the interests of the members of the proposed class or subclasses that she seeks to represent. Moreover, Plaintiff has retained experienced and competent counsel to prosecute the class and subclass claims.

### *Predominance and Superiority*

37.     The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class. For example, individual adjudication would create a risk that Defendant's labeling is found to be unfit for its ordinary use for some proposed class members, but not others.

38.     Common questions of law and fact predominate over any questions affecting only individual members of the proposed class. These common legal and factual questions arise from central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member. For example, a core liability question is common: whether Defendant has made, marketed, and sold a

defective product unfit for its ordinary use.

39.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to separately litigate millions of individual claims.

### *Class-wide Injunctive Relief*

40.     Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole.

## VI.    Claims.

### Count I: Violation of New York Gen. Bus. Law § 349

### (by Plaintiff and the New York Subclass)

41.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

42.     Plaintiff Gittens brings this claim individually and for the New York Subclass, seeking statutory damages available under New York Gen. Bus. Law § 349 (among other relief).

43.     Defendant's false and misleading claims that the products are free from defects and safe for consumption are consumer-oriented.

44.     Defendant's misrepresentations have a broad impact on consumers at large, i.e., the hundreds of thousands (or potentially millions) of New Yorkers that purchase these products. These transactions recur every day.

45.     Defendant's misrepresentations that the Products are free from defects and safe and fit for consumption were material. As alleged in detail above, these misrepresentations were important to consumers and affected their choice to purchase Cinnamon Powder Products. And, as alleged in detail above, these misrepresentations were likely to mislead reasonable consumers.

46.     Defendant's misrepresentations were willful and knowing. Because Defendant makes and sells the Products, Defendant knows that they contained, or risked being contaminated by lead. As a result, Defendant know was aware of a material defect—that the Products may contain lead. Furthermore, Defendant controls its labeling and knowingly omitted this information.

47.    Plaintiff Gittens and subclass members were injured and suffered an ascertainable loss as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased the Products if they had known that they contained lead, or risked being contaminated by lead, (b) they overpaid for the Products because the Products are sold at a price premium due to Defendant's misleading representations and omissions, or (c) they received a product that was defective and thus less valuable than what they paid for.

48.    Plaintiff Gittens and the New York Subclass seek statutory damages of $50, treble damages, reasonable attorney fees, and all other available relief. *See* N.Y. Gen. Bus. Law § 349 (h).

## Count II: Violation of New York Gen. Bus. Law § 350

### (by Plaintiff and the New York Subclass)

49.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

50.    Plaintiff Gittens bring this cause of action individually and for the New York Subclass, seeking statutory damages available under New York Gen. Bus. Law § 350 (among other relief).

51.    Defendant's false and misleading claim that the products are free of defects anmd safe for consumption impacted consumers at large. Defendant's misrepresentations have a broad impact on consumers at large, i.e., the hundreds of thousands (or potentially millions) of New Yorkers that purchase Cinnamon Powder Products. These transactions recur every day.

52.    Defendant's claims were deceptive and misleading in a material way. As alleged in detail above, these misrepresentations were important to consumers and affected their choice to purchase Cinnamon Powder Products. And these misrepresentations were likely to mislead reasonable consumers.

53.    Plaintiff Gittens and the Subclass saw and relied on Defendant's misrepresentations that the products are free from defects and safe and fit for consumption.

54.    Defendant's misrepresentations were willful and knowing. Because Defendant makes and sells the Products, Defendant knows that they contained, or risked being

contaminated by lead. As a result, Defendant know was a aware of a material defect—that the Products may contain lead. Furthermore, Defendant controls its labeling and knowingly omitted this information.

55.    Plaintiff Gittens and subclass members were injured and suffered an ascertainable loss as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased the Products if they had known that they contained lead, or risked being contaminated by lead, (b) they overpaid for the Products because the Products are sold at a price premium due to Defendant's misleading representations and omissions, or (c) they received a product that was defective and thus less valuable than what they paid for.

56.    Plaintiff Gittens and the New York Subclass seek statutory damages of $500, treble damages, reasonable attorney fees, and all other available relief. *See* N.Y. Gen. Bus. Law § 350-e (3).

<u>**Count III: Breach of Implied Warranty**</u>

**(on behalf of Plaintiff and the Nationwide ex-California Class)**

57.    Plaintiff incorporates by reference each and every factual allegation set forth above.

58.    Plaintiff brings this claim on behalf of herself and the Nationwide ex-California Class.  In the alternative, Plaintiff Gittens brings this claim on behalf of herself and the New York Subclass.

59.    The Uniform Commercial Code § 2-314 states that "a warranty that [] goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." "Merchantable" goods must be "fit for the ordinary purposes for which the goods are used."

60.    Defendant is and was, at all relevant times, a merchant with respect to consumer food products, and with respect to cinnamon powder in particular. Defendant's Products each constitute a "good" under the UCC.

61.    Plaintiff and class members purchased Defendant's Products.

62.    Plaintiff and the class members were foreseeable third-party beneficiaries of

Defendant's sale of the Products.  Defendant sells the Products to retailers for distribution and sale to consumers such as Plaintiff and class members.  Defendant's Products are cinnamon powder intended for purchase by consumers, such as Plaintiff and class members.

63.     As the manufacturer of cinnamon powder, Defendant impliedly warranted to Plaintiff and the Class that the products were of merchantable quality and were safe for their ordinary use as cinnamon powder.  In fact, as described in detail above, the products, when sold and at all times after, were not in merchantable condition and were not fit for the ordinary purpose for which they are used.  Specifically, the Products are inherently flawed and defective because they contained lead.  The defective design makes them unfit for ordinary purposes even when used correctly.  In addition, Defendant's Products are not adequately labeled because they fail to disclose that they contain lead.

64.     Thus, Defendant breached the implied warranty of merchantability in connection with the sale and distribution of the Products.

65.     Defendant's sale of the Products is subject to the implied warranty of merchantability.  By selling Products to consumers, Defendant is warranting that the Products are merchantable, meaning that they are fit for their ordinary purpose as cinnamon powder.

66.     Defendant breached this warranty because, as alleged in detail above, Defendant's Products are unsafe for consumption and are contaminated.  As discussed in greater detail above, Defendant's Products contain lead. For example, a single serving of Defendant's Product contained lead that exceeded the maximum allowable daily dose limits under California law. This renders Defendant's products unsafe and unfit for human consumption, and in particular by toddlers and young children, and so unfit for their ordinary purpose.

67.     Defendant's Products would not pass without objection in the trade under the contract description; are not of fair average quality within the description; are not fit for the ordinary purposes for which such goods are used; do not run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; are not adequately labeled; and do not conform to the promises or affirmations of fact made on the label.

12

68.     Plaintiff provided Defendant with notice of this breach of implied warranty, by mailing a notice letter to Defendant's headquarters on October 4, 2024.

69.     Plaintiff and Class members were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Defendant's Products if they had known that the products contained lead, or risked being contaminated by lead, (b) they overpaid for the products because the products are sold at a price premium due to Defendant's false implied warranty; or (c) they received products that were, in truth, worthless.

## Count IV: Breach of Express Warranty

### (on behalf of Plaintiff and the Nationwide ex-California Class)

70.     Plaintiff incorporates by reference each and every factual allegation set forth above.

71.     Plaintiff brings this claim on behalf of herself and the Nationwide ex-California Class.  In the alternative, Plaintiff Gittens brings this claim on behalf of herself and the New York Subclass.

72.     Defendant marketed its Products directly to consumers, and Defendant's warranty was the basis of the bargain and was relied-upon by Plaintiff and Class members.

73.     In fact, the Products do not conform to the above-referenced representations because, as alleged above, they are contaminated with lead.  Thus, the warranty was breached.

74.     Plaintiff notified Defendant with notice of these breaches of warranties by mailing a notice letter on October 4, 2024.

75.     Plaintiff and class members were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Defendant's Products if they had known that the products contained lead, or risked being contaminated by lead, (b) they overpaid for the products because the products are sold at a price premium due to Defendant's false implied warranty; or (c) they received products that were, in truth, worthless.

## Count V: Quasi-Contract

### (on behalf of Plaintiff and the Nationwide ex-California Class)

76.     Plaintiff incorporates by reference each and every factual allegation set forth

above.

77.     Plaintiff brings this claim on behalf of themselves and the Nationwide ex-California Class.  In the alternative, Plaintiff Gittens brings this claim on behalf of herself and the New York Subclass.

78.     As alleged in detail above, Defendant's false and misleading representations caused Plaintiff and the class to pay a price premium for the Products.

79.     In this way, Defendant received a direct and unjust benefit, at the expense of Plaintiff and the class.

80.     Plaintiff and the class seek the equitable return of this unjust benefit.

**VII.    Jury Trial Demand.**

81.     Plaintiff demand the right to a jury trial on all issues so triable.

**VIII.   Prayer for Relief.**

82.     Plaintiff seek the following relief for herself and for the proposed class and subclass:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Damages, including statutory and treble damages, as allowed by law;
- Restitution, disgorgement, and other just equitable relief, as allowed by law;
- Rescission;
- Attorney's fees, as available by law;
- An injunction;
- Pre- and post-judgment interest; and
- Any additional relief that the Court deems reasonable and just.

Dated: October 18, 2024                    Respectfully submitted,

                                           By: */s/ Christin K. Cho*
                                           Christin K. Cho (Cal. Bar No. 238173)*
                                           christin@dovel.com
                                           DOVEL & LUNER, LLP
                                           201 Santa Monica Blvd., Suite 600
                                           Santa Monica, California 90401
                                           Telephone: (310) 656-7066
                                           Facsimile: (310) 656-7069

                                           *Counsel for Plaintiff*

                                           *Pro Hac Vice forthcoming